UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MUNA WAIS FIDHIN,<br>Defendant. | Case No. 0:25-CR-00334-NEB-DTS-1<br>**DEFENDANT MUNA WAIS FIDHIN'S SUPPLEMENTAL BRIEF REGARDING PROPOSED 404(B) WITNESS EVIDENCE** |

Pursuant to the Court's request during the September 28, 2026 Pretrial Hearing, Defendant Muna Wais Fidhin ("Defendant" or "Ms. Fidhin"), by and through her counsel, submits this supplemental briefing on the exclusion of Defendant's new late-noticed witnesses as providing unnoticed Rule 404(b) character evidence. This case is different from the Government's previous Feeding our Future trials for one very important reason: the Government *has not* charged Ms. Fidhin with participation in any conspiracy. In other trials, the Government relied upon 18 U.S.C. § 371 to introduce evidence of broadly alleged conspiracies to commit offenses against the United States, arguing that evidence was relevant to proving the elements of the charged conspiracy count. Those broad, sweeping allegations and generic evidence are not, however, relevant to proving the *specific* counts with which Ms. Fidhin is actually charged, and the Government has failed to provide 404(b) notice of its intent to use them pursuant to the Court's Amended Case Management

Order (ECF No. 30). Ms. Fidhin will object to the Government's use of unnoticed Rule 404(b) evidence at trial.[1]

Here, to prove Wire Fraud, the Government must prove that Ms. Fidhin "devised or intend[ed] to devise any scheme or artifice to defraud," and transmitted a writing by means of wire "for the purpose of executing *such scheme or artifice* . . . ." 18 U.S.C. § 1343 (emphasis added). "[E]ach execution of a single scheme to defraud constitutes a separate offense." *United States v. Swinton*, 75 F.3d 374, 378 (8th Cir. 1996). "Where the charged offenses were not isolated acts, but rather, were part of the series of transactions *involving the same principal actors, in the same roles, and employing the same general modus operandi*, the various acts may be considered to constitute a single scheme." *Id*. (emphasis added). Ms. Fidhin is charged with three counts of wire fraud, which provide the only basis upon which "scheme or artifice" evidence could be properly used as intrinsic to the charged offense, rather than as improper undisclosed character evidence under Federal Rule of Evidence 404(b):

- Count 1: A January 31, 2021 email allegedly sent by Ms. Fidhin to Feeding our Future employee Abdikerm Eidleh with attachments of images of receipts.
- Count 2: An April 30, 2021 email allegedly sent by Ms. Fidhin to a Feeding our Future email address with images of a menu, a receipt, and meal count sheets.

[1] During the September 28, 2026 hearing, the Court expressed concern about the scope of this objection and impact it could have upon the trial. To clarify, Ms. Fidhin's objection does not apply generally to every mention of Partners in Nutrition that may come from a witness or document. But Ms. Fidhin *does* intend to object if the Government attempts to elicit testimony or introduce evidence relating to Ms. Fidhin's work with Partners in Nutrition that falls within the scope of Federal Rule of Evidence 404(b).

- <u>Count 3</u>: An April 30, 2021 email allegedly sent by Ms. Fidhin to a Feeding our Future email address with images of a receipt and meal count sheets.

These three counts share one thing in common: they relate only to Ms. Fidhin's work with the organization Feeding our Future, not Partners in Nutrition.

The Government is entitled to introduce evidence of uncharged transactions outside of Rule 404(b) if they are "intrinsic" to the charged counts. "[U]ncharged transactions are 'intrinsic' to the charged counts of bank fraud if (1) the collected transactions were all part of a single scheme, or (2) the uncharged transactions were 'so blended or connected with the ones on trial as that proof of one incidentally involves the others.'" *Swinton*, 75 F.3d at 378 (citation modified). The alleged "scheme or artifice" with respect to Counts 1-3 does not encompass Ms. Fidhin's work with Partners in Nutrition. Counts 1-3 were not "part of the series of transactions involving the same principal actors, in the same roles, and employing the same general modus operandi . . . ." *Id.* To the contrary, Ms. Fidhin was never required to submit rosters to Feeding our Future. The alleged conduct the Government has raised with its two new witnesses has no relationship with the actual counts of wire fraud with which Ms. Fidhin is charged.

And just as it has not charged Ms. Fidhin as participating in a conspiracy with anyone, the Government has certainly not alleged that Partners in Nutrition and Feeding our Future were in the same "scheme" with one another. To the contrary, in the first Feeding our Future trial, the Government's cooperating witness, Feeding our Future employee Hadith Ahmed, acknowledged and agreed with defense counsel's statement that "there was basically an open warfare between Partners in Nutrition and Feeding our

Future[.]" (Tr. Of Trial (Volume XIII), *United States v. Abdiaziz Farah et al.*, No. 0:22-cr-124 (NEB/DTS), at 3105:24-3106:2 (ECF No. 730) (filed November 27, 2024) (excerpt attached hereto as Exhibit A).) Mr. Ahmed explained "[w]e wanted all the sites to come under Feeding Our Future[.]" (*Id.*, at 3106:7-8.) He further explained that Ms. Bock, the head of Feeding our Future, and Ms. Lomen, the head of Partners in Nutrition, hated each other "[a]t that time" and "had a grudge on each other . . . ." (*Id.*, at 3108:17-22.) Whatever "scheme or artifice" the Government believes it has alleged with respect to Counts 1-3, it is not a "scheme or artifice" involving Ms. Fidhin's time working with Partners in Nutrition. Ms. Fidhin transferred from working with Feeding our Future and her business M5 Café, to Partners in Nutrition with a nonprofit, M5 Care, in October of 2021. (*See, e.g.*, Govt. Trial Br. at 6 (ECF No. 61).) Ms. Fidhin's work with Partners in Nutrition did not involve the same principal actors, in the same roles, and employing the same general modus operandi as her previous work with Feeding our Future. Rosters are irrelevant to Ms. Fidhin's work with Feeding our Future—the only time relevant to Counts 1-3.

*United States v. Thomas* involved a defendant who was convicted on four counts of wire fraud "based on a scheme she perpetrated to defraud mortgage lenders by submitting false income on loan applications." 791 F.3d 889, 892 (8th Cir. 2015). At trial, the government was allowed "to introduce evidence of a *separate, subsequent scheme* in which Thomas attempted to defraud mortgage lenders." *Id.* at 893 (emphasis added). The Court explained that the "schemes are similar because they both involve the misrepresentation of income to fraudulently obtain loans" but the separate scheme occurred the year following the transactions at issue in the charged counts. *Id.* at 894. The Court did not even consider

whether the alleged conduct could be intrinsic to the charged offenses, analyzing the issue solely under Federal Rule of Evidence 404(b)—it was a "separate, subsequent scheme," not "such scheme" required under 18 U.S.C. § 1343. *Id*. at 893. Here, any alleged conduct involving Partners in Nutrition is entirely separate and subsequent from Ms. Fidhin's involvement with Feeding our Future. The principals are different. The times are different. The modus operandi—even the requirement of rosters itself—are different. The evidence the Government now proposes based upon its Friday interviews is not intrinsic to the actually charged offenses at issue in this case.

And because that evidence is not intrinsic, it should be excluded. The Government was required to provide notice of intent to introduce any evidence under Federal Rule of Evidence 404(b) 28 days prior to trial under the Court's October 22, 2025 Amended Case Management Order (ECF No. 30) (the "Order"), and it provided none. The Court's Order even went so far as to explain that "[i]f the government believes that evidence at issue *might be 'intrinsic' to the charged offenses*, but recognizes that it may present a close call . . . the government should include such information in the notice required by this Order so that its admissibility can be addressed ahead of trial, if needed." (Order, at 4 (emphasis added).) The Government provided no 404(b) notice pursuant to the Court's Order. Ms. Fidhin was entitled to, and did operate under the presumption that the Government intended to comply with the Order and the Federal Rules of Evidence. As such, Ms. Fidhin was deprived of the opportunity to evaluate any "other crimes" evidence the Government believes it is entitled to introduce, or move in limine to exclude that specific evidence if necessary. Ms. Fidhin continues to presume that the Government does not intend to elicit

testimony from any of its witnesses or introduce any exhibits that would contain improper, unnoticed "other crimes" evidence under Federal Rule of Evidence 404(b). Ms. Fidhin intends to object, and does object, to the use of any evidence that falls within the scope of Federal Rule of Evidence 404(b) and should have been disclosed weeks ago to allow Ms. Fidhin to exercise her constitutionally-protected right to Due Process under the Fourteenth Amendment.

**MASLON LLP**

Dated: September 30, 2026

By: *s/ Steven L. Schleicher*
Steven L. Schleicher (#0260587)
Clayton J. Carlson (#0401182)
225 South Sixth Street
Suite 2900
Minneapolis, MN 55402-4140
Telephone: (612) 672-8200
Facsimile: (612) 642-8354
Email: steve.schleicher@maslon.com
clayton.carlson@maslon.com

**ATTORNEYS FOR DEFENDANT MUNA WAIS FIDHIN**